**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

WILLIAM R. YODER and                                                                    PLAINTIFFS
MARGARET C. YODER

v.                                         No. 4:05CV01358 JLH

SAFECO INS. CO. OF AMERICA,
CHRISTON R. JENKINS, and
AMANDA JENKINS                                                                          DEFENDANTS

**OPINION AND ORDER**

This is a coverage dispute. Christon and Amanda Jenkins filed suit against plaintiffs William and Margaret Yoder in the Circuit Court of Pulaski County, Arkansas, alleging defects in a home sold to the Jenkinses by the Yoders. The Yoders commenced this action seeking a declaratory judgment that Safeco Insurance Company of America has the duty to defend and indemnify them against the Jenkinses' suit under the terms of the Yoders' homeowner's insurance policy. Safeco has filed a motion for summary judgment (Docket #11). For the following reasons, Safeco's motion is granted.

A court should grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The party moving for summary judgment bears the initial responsibility of informing the district court of the basis of its motion and identifying the portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Group Health Plan, Inc. v. Philip Morris USA, Inc.*, 344 F.3d 753, 763 (8th Cir. 2003). When the

moving party has carried its burden under Rule 56(c), the non-moving party must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1985) (quoting FED. R. CIV. P. 56(e)).  The non-moving party sustains this burden by showing that there are "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.  When a non-moving party cannot make an adequate showing on a necessary element of the case on which that party bears the burden of proof, the moving party is entitled to judgment as a matter of law.  *Celotex*, 477 U.S. at 323.

**I.**

The Yoders sold a house to the Jenkinses on August 31, 2003.  According to the Jenkinses' complaint, they did not notice any defects in the home for about one year after the closing.  Water allegedly began draining through the basement wall, however, when heavy rainfall occurred during the fall of 2004.  The Jenkinses then hired a repairman, who allegedly told them that similar problems existed in the home while the Yoders lived there and that he had helped the Yoders treat the home for water damage.  The Yoders purportedly installed paneling on the walls to cover the water damage before selling the home to the Jenkinses.

The Jenkinses filed their complaint in the underlying case in April, 2005, alleging breach of contract, fraud, and misrepresentation. The Jenkinses later amended their complaint to plead, in the alternative, that the Yoders negligently failed to discover and disclose the defects in the home.  The Jenkinses seek rescission of the sales contract, a refund of all their closing costs and interest payments, a refund of the cost of the improvements that they made to the home, and punitive damages.

At the time of the sale, the Yoders were insured under a homeowner's insurance policy issued by Safeco. The Yoders cancelled the policy in the fall of 2003, after selling the home to the Jenkinses. The Yoders notified Safeco when they received service of the original complaint. Safeco refused to provide a defense to them, stating that no coverage existed under the homeowner's policy for the allegations included in the complaint -- intentional breach of contract and fraudulent behavior -- and that Safeco thus had no duty to provide a defense. The Yoders contacted Safeco again after the Jenkinses amended their complaint to include the negligence claim. Safeco again responded that it had no duty to defend or indemnify the Yoders.

The Yoders claim coverage under the "PERSONAL LIABILITY" section of the policy, which states:

> If a claim is made or a suit is brought against any ***insured*** for damages because of ***bodily injury*** or ***property damage*** caused by an ***occurrence*** to which this coverage applies, we will:
> 1. pay up to our limit of liability for the damages for which the ***insured*** is legally liable; and
> 2. provide a defense at our expense by counsel of our choice even if the allegations are groundless, false or fraudulent.

An "occurrence" under the policy "means an accident, including exposure to conditions which results in: a. bodily injury; or b. property damage; during the policy period." The word "accident" is not defined in the policy. "Bodily injury" is defined as "bodily harm, sickness or disease." "Property damage" means "physical damage to or destruction of tangible property, including loss of use of this property."

## II.

The parties agree as to the underlying facts of this case. The parties disagree as to whether, as a matter of law, Safeco has a duty to defend and indemnify the Yoders under the terms of the

3

homeowner's policy. The Yoders do not contend that Safeco has a duty to defend or indemnify them against the Jenkinses' claims for breach of contract, misrepresentation, or fraud. The Yoders assert, however, that Safeco has such duties as to the Jenkinses' allegation of negligence.

Safeco argues that it is entitled to summary judgment for numerous reasons, only three of which will be addressed by the Court. First, Safeco asserts that the Jenkinses' negligence claim is one for negligent misrepresentation, a tort that Arkansas does not recognize. Second, Safeco contends that a negligent misrepresentation is not an "occurrence" under the terms of the policy. Third, Safeco contends that the damages claimed by the Jenkinses are economic or contractual damages, not damages for "property damage" or "bodily injury" covered by the policy. These arguments are well-taken, as explained below.

**A.    The Complaint States a Claim for Negligent Misrepresentation, Which is Not a Cognizable Tort Under Arkansas Law.**

The Yoders contend that the Jenkinses' complaint states a cause of action for ordinary negligence, not negligent misrepresentation. Specifically, the complaint alleges that the Yoders were "negligen[t] in that [they] either knew or reasonably should have known through the exercise of ordinary care that they had a water problem in the basement of their home," and that "[t]hrough their negligence, [the Yoders] failed to discover this problem and thus, failed to disclose it." The Yoders correctly assert that the term "negligent misrepresentation" does not appear in the complaint.

As a general rule, the pleadings against an insured determine the insurer's duty to defend. *Madden v. Cont'l Cas. Co.*, 53 Ark. App. 250, 254, 922 S.W.2d 731, 734 (1996). "The duty to defend is broader than the duty to pay damages and the duty to defend arises where there is a possibility that the injury or damage may fall within the policy coverage." *Id.* (citing *Commercial*

*Union Ins. Co. of Am. v. Henshall*, 262 Ark. 117, 553 S.W.2d 274 (1977)). "It is the allegations made against the insured, however groundless, false, or fraudulent such allegations may be, that determine the duty of the insurer to defend the litigation against its insured." *Id.* (citing *Equity Mut. Ins. Co. v. S. Ice Co.*, 232 Ark. 41, 334 S.W.2d 688 (1960)).

The inquiry does not end here, however, as the cause of action must be determined by looking at the "quality and purpose" of the complaint as a whole, not simply by the use of a word such as "negligently." *See Fisher v. Travelers Indem. Co.*, 240 Ark. 273, 398 S.W.2d 892 (1966). *Fisher* involved a suit arising from a physical attack by an insured upon another man. *Id.* at 273-74, 398 S.W.2d at 892-93. The man who had been attacked alleged in his complaint that the insured "did willfully, unlawfully, and negligently injure [him]." *Id.* at 274-75, 398 S.W.2d at 893. The insured argued that, because the word "negligently" appeared in the complaint, his insurance company had a duty to defend him under a policy providing coverage for injuries "caused by accident." *Id.* at 275, 398 S.W.2d at 893.

In *Fisher*, the court held that the character of the liability was to be "'determined by the quality and purpose of the transaction as a whole.'" *Id.* (quoting *Messersmith v. Am. Fid. Co.*, 232 N.Y. 161, 133 N.E. 432, 19 A.L.R. 876 (1921)). The injured party obviously "was not seeking damage for injuries to himself caused by an accident or negligence"; rather, he sought "both compensatory and punitive damages for an alleged willful and intentional act." *Id.* at 276, 398 S.W.2d at 894. Thus, the court in *Fisher* held, "[i]t is evident that the nature of this tort action was not changed by the used of the word 'negligently' one time." *Id.* at 275, 398 S.W.2d at 893-94. *See also Carolina Cas. Ins. Co. v. Pinnacol Assurance*, 425 F.3d 921, 929 (10th Cir. 2005) ("The facts alleged in a complaint, not the complaint's legal characterization of those facts, ordinarily control

5

coverage."); *Standard Fire Ins. Co. v. Proctor*, 286 F. Supp. 2d 567, 572 (D. Md. 2003) (the "mere allegation of negligence is not sufficient to establish [an insurer's] duty to defend;" rather, "it is the substance of the underlying claim, not its label, that controls in duty-to-defend and coverage cases"). "To hold otherwise would be contrary to the plain provisions of the policy," which provided that an "assault and battery" would not be deemed an "accident" if committed by the insured. *Fisher*, 240 Ark. at 275, 398 S.W.2d at 893.

Although the Jenkinses' complaint uses the terms "negligence" and "ordinary care," the nature of the tort alleged in this case is misrepresentation. While the complaint alleges that the Yoders negligently failed to discover the water damage in the basement, the Jenkinses are not suing the Yoders for failing to discover a defect in a home that the Yoders then owned. The Jenkinses are suing the Yoders because they allege that the Yoders, intentionally or otherwise, misrepresented to the Jenkinses that the home did not have the defect in question. The complaint states that the condition of the home was misrepresented by the Yoders on the "Seller's Disclosure Form" that the Yoders completed at the time of the sale and that the Jenkinses would not have purchased the home had they been informed of its defects. The Jenkinses cannot create coverage under the Yoders' insurance policy by merely labeling the alleged facts as "negligence" where those facts do not support such a cause of action. *See Standard Fire Ins. Co.*, 286 F. Supp. 2d at 571-72.

The "negligence" asserted in the complaint is thus a claim of negligent misrepresentation. This cause of action, however, does not exist in Arkansas. The Arkansas Supreme Court has expressly refused to recognize the tort of negligent misrepresentation. *South County, Inc. v. First W. Loan Co.*, 315 Ark. 722, 725, 871 S.W.2d 325, 326 (1994). If the claim for negligent misrepresentation is eliminated from the complaint, the only claims remaining are breach of contract,

fraud, and intentional misrepresentation, and the Yoders do not assert that Safeco owes them a duty of defense or indemnity as to these claims. That the only arguably covered claim is not an actionable tort is a sufficient basis to grant Safeco's motion for summary judgment. *See Douglass v. Hartford Ins. Co.*, 602 F.2d 934, 935 (10th Cir. 1979) (court must determine whether Colorado would recognize negligent entrustment as an actionable tort before deciding whether insurer had duty to defend this type of lawsuit); *Standard Fire Ins. Co.*, 286 F. Supp. 2d at 571-73 (insurer had no duty to defend where Maryland did not recognize claims alleged in the complaint).

**B.      A Negligent Misrepresentation is Not an "Occurrence" as Defined in the Safeco Policy.**

Even if Arkansas law recognized the tort of negligent misrepresentation, the Safeco policy does not afford the Yoders coverage for such alleged conduct. The policy covers claims against an insured for bodily injury or property damage caused by an "occurrence." An "occurrence" is then defined as an "accident" resulting in "bodily harm" or "property damage." Thus, even assuming that the Jenkinses have stated a claim for "property damage" or "bodily injury," the alleged negligent misrepresentation would have to qualify as an "accident" that caused such damages or injury.

As noted above, the policy does not define the term "accident." The Arkansas Supreme Court has defined "accident" as "'an event that takes place without one's foresight or expectation – an event that proceeds from an unknown cause, or is an unusual effect of a known cause, and therefore not expected.'" *U.S. Fid. & Guar. Co. v. Cont'l Cas. Co.*, 353 Ark. 834, 845, 120 S.W.3d 556, 563 (2003) (quoting *Cont'l Ins. Co. v. Hodges*, 259 Ark. 541, 534 S.W.2d 764 (1976)). The Yoders' alleged misrepresentations, even if unintentional, cannot fairly be characterized as an "event" "from an unknown cause" or as "an unusual effect of a known cause." While Arkansas courts have not addressed this specific question, the Ninth Circuit has held that negligent

misrepresentations are not "accidents" or "occurrences" as defined in a liability policy with language identical to the policy in this case. *Safeco Ins. Co. of Am. v. Andrews*, 915 F.2d 500, 502 (9th Cir. 1990) (misrepresentations as to defects in property were not an "occurrence" or a "peril insured against" under the terms of the policy).

Actions arising from misrepresentations in connection with the sale of a home are not the type of liability that the Safeco homeowner's policy was designed to cover. Although a court must resolve any doubt in favor of the insured in determining whether a complaint states a claim within the policy coverage, *Murphy Oil USA, Inc. v. Unigard Sec. Ins. Co.*, 347 Ark. 167, 178, 61 S.W.3d 807, 814 (2001), courts "are not required by the rules of contractual construction to stretch our imaginations to create coverage where none exists," *Pate v. U.S. Fid. & Guar. Co.*, 14 Ark. App. 133, 136, 685 S.W.2d 530, 532 (1985). Because any alleged "negligence" on the part of the Yoders was negligent misrepresentation, and such misrepresentations are not an "accident" or an "occurrence" under the terms of the policy, Safeco is entitled to judgment as a matter of law that it has no duty to defend or indemnify the Yoders against the Jenkinses' claims.

**C.    The Complaint Does Not Assert a Claim for "Property Damage" or "Bodily Injury" as Defined in the Safeco Policy.**

Negligent misrepresentation claims arising from the sale of property that is in a defective condition are claims for economic or contractual damages, not property damage. *Safeco Ins. Co. of Am.*, 915 F.2d at 502 (claims of negligent misrepresentation exposed insured to liability for economic loss, not liability for damage to tangible property); *Shelter Mut. Ins. Co. v. Brown*, 345 F. Supp. 2d 645, 649 (S.D. Miss. 2004) (negligent misrepresentations as to condition of house did not cause property damage; "the only cognizable damages from such torts are economic and contractual

in nature" and thus do not fall within coverage of liability insurance policies); *Bush v. Shoemaker-Beal*, 26 Kan. App. 2d 183, 185, 987 P.2d 1103, 1105 (1999) (homeowner's policy did not cover insured's negligent misrepresentations as to the condition of the property because such claims give rise to economic damages, not property damages); *Lawyer v. Kountz*, 716 So. 2d 493, 498 (La. Ct. App. 1998) (claims sounding in negligent and intentional misrepresentation, by their nature, were not claims for property damage and thus did not fall within coverage of insurance policy); *State Farm Lloyds v. Kessler*, 932 S.W.2d 732, 737 (Tex. App. 1996) (alleged misrepresentations did not cause home's pre-existing drainage and foundation problems, and costs for restoration and loss of use were economic damages, not property damages); *Qualman v. Bruckmoser*, 163 Wis. 2d 361, 365-66, 471 N.W.2d 282, 284-85 (Wis. Ct. App. 1991) (damages for alleged negligent misrepresentations were pecuniary in nature and did not constitute property damage as defined by insurance policy). The fact that the underlying lawsuit involves some element of "property damage," *i.e.*, the defective condition of the property, does not change the nature of the claim or the risks insured against. *Safeco Ins. Co. of Am.*, 915 F.2d at 502; *Unigard Sec. Ins. Co. v. Murphy Oil USA, Inc.*, 331 Ark. 211, 226, 962 S.W.2d 735, 742-43 (1998). A finding that coverage existed in such a case would essentially be a finding "that based on an act of sale, a homeowner's insurer becomes the warrantor of the condition of the insured property." *Lawyer*, 716 So. 2d at 498. This is not the type of coverage contemplated by an insurance policy such as the one in this case. *See id.*

The Yoders seek to distinguish their case from those cited above by arguing that the Jenkinses' complaint states claims for loss of use of the home, which is covered as a form of "property damage" under the policy, and for "bodily injury." These arguments do not aid the Yoders' position.

9

The "loss of use" argument fails for two reasons. First, the complaint neither alleges that the Jenkinses were unable to use the home nor seeks damages for loss of use. The complaint merely alleges that, because of the mold infestation, the "home has been rendered virtually inhabitable." Second, while the policy includes "loss of use" as a form of "property damage," this fact does not alter the principle that a claim for negligent misrepresentation in connection with the sale of a home is a claim for economic or contractual damages, not property damages. *See Kessler*, 932 S.W.2d at 734, 737 (where insureds allegedly misrepresented the condition of the property sold, the loss of use of the property was a form of economic damages flowing from the alleged misrepresentations, even though the insurance policy defined "property damage" to include loss of use).

The "bodily injury" claim also fails for two reasons. First, while the complaint alleges that the Jenkins family has "experienced all sorts of health problems" because of the mold, and this allegation could be construed as a claim of bodily injury, the Jenkinses seek no damages as to this issue. Second, even if the Jenkinses had stated a claim for damages for bodily injury, negligent misrepresentation claims, as explained above, give rise only to economic or contractual damages.

## CONCLUSION

No material fact is in dispute. As a matter of law, the Safeco policy does not cover the Jenkinses' claims of negligent misrepresentation against the Yoders. Safeco's motion for summary judgment (Docket #11) is therefore GRANTED.

IT IS SO ORDERED this 7th day of March, 2006.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE